### APPEAL OF HAMPTON COTTON MILLS.

Docket No. 589.   Submitted February 25, 1925.   Decided September 7, 1925.

Depreciation on cotton mill machinery and buildings determined.

*O. H. B. Bloodworth, Jr., Esq.*, for the taxpayer.
*A. H. Fast, Esq.*, for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal involves income and profits taxes of a corporation for 1920 in a deficiency amounting to $7,879.94, based upon the disallowance of depreciation as claimed by the taxpayer. Upon the oral evidence and exhibits introduced the Board makes the following

FINDINGS OF FACT.

The taxpayer was organized as a corporation under the laws of Georgia in 1900. In that year it erected a cotton mill of brick construction, at a cost of $13,475, and installed machinery and equipment costing $40,104.96, and erected some thirty or more tenement houses for its employees at a cost of $20,000, or a total cost of $73,579.96.

Further additions and improvements, with a general overhauling and reconditioning in 1906 and 1909, made the corresponding cost values per the books as of December 31, 1916, of factory buildings, $37,591.21; machinery and equipment, $152,761.50; and tenement buildings, $25,050, with a resulting total cost per the books of $215,402.71. When the taxpayer added to its plant in 1906 and 1909, the actual price paid for machinery was capitalized, but reconditioning of old machinery, the labor for setting up the new machinery, and the general overhauling were not charged to capital but to expense. In the past four years their book methods have been changed in that respect.

During the years from 1900 through 1916 and up to the latter part of 1917 the mill and facilities were used for the production of a yarn for use in the knitting of high grade underwear and hosiery. In the making of that yarn the highest grade of raw cotton was used and the machinery was operated at a comparatively slow speed.

During that period also the taxpayer had an experienced group of long-time employees, who took pride in the maintenance of the plant and the machinery and in the tenement houses. There were some 12 overseers or superintendents in charge of the various departments for many years.

During those 16 years, the actual aggregate charge-off for depreciation up to December 31, 1916, was $10,807.33. The largest item of such cotton machinery was carding and spinning machinery which, if properly maintained by required oiling and replacement of parts and operation at the slow speed required, would have a life of 40 years, and the foundations for such machinery, if properly maintained, might last 100 years.

With the advent of the World War many changes occurred in the operation of the taxpayer's mill. With little difference in the price to be obtained for the sale of yarn on account of the quality, the taxpayer began in the latter part of 1917 gradually to reduce the quality of its yarn. It geared up its machinery and used increased power, thereby operating at a high speed in contrast to the slow speed maintained in the prior years.

That change resulted in increased wear and tear by reason of vibration, which affected both the machinery and the building, and

various parts of the machinery required replacement three times as often as in the prior years. The taxpayer used a continuously cheaper grade of cotton, until it was finally in the situation of using the very lowest grade of cotton, including sweepings from the floor and cardings which had been thrown aside as waste. It also used a small amount of better grade cotton in order to give the yarn staple enough to hold.

The taxpayer finally was making a hard-twist yarn and sometimes carpet yarns. The effect of the use of the dirtier and poorer grades of raw material was to damage the machinery, particularly by causing the fine wires of the cards to bend and break down, requiring frequent replacements.

During the years beginning with 1917 the taxpayer lost all 12 of its superintendents, either because of their going into the military service or leaving to engage in employment with competitors. Many of its other employees also left for similar reasons and it was obliged to employ practically anyone it could get, and suffered considerable damage to machinery and its property through inexperienced employees. Special trouble was experienced by reason of burnt-out bearings on account of improper oiling. The class of new employees also occasioned considerable destruction to the tenement buildings and the taxpayer was obliged to maintain a watchman to preserve the buildings.

During the years subsequent to 1916, in addition to the increased speed, wear and tear, and damage, the taxpayer, on account of reduced forces, did not make the repairs and preserve the property as it had done during the prior years. In the years 1917 to 1920, inclusive, on the approval of the directors, the following charge-offs for depreciation were made:

| | |
|---|---:|
| 1917 | $4, 203. 33 |
| 1918 | 10, 071. 06 |
| 1919 | 15, 775. 98 |
| 1920 | 20, 359. 53 |

During the year 1919 the taxpayer acquired another mill at a cost of $150,000, and during the years 1917 to 1920, inclusive, made additions to the original factory building, machinery, and tenements so that at December 31, 1920, the plant account on the books stood at—

| | |
|---|---:|
| Factory building | $43, 445. 76 |
| Machinery and equipment | 212, 077. 89 |
| Tenement buildings | 43, 300. 07 |
| New mill | 150, 000. 00 |
| Total | 448, 823. 72 |

The corresponding totals at December 31, 1919, were:

Factory building_____ $43,445.76
Machinery and equipment_____ 168,487.90
Tenement buildings_____ 26,550.00
New mill_____ 150,000.00

　　　Total_____ 388,483.66

Prior to 1917 the taxpayer had used an average depreciation rate of about 1 per cent; subsequent to 1916, and in the year 1920 in question, it used a rate of about 4¾ per cent, whereas, in auditing the taxpayer's return, the Commissioner used a rate of 2½ per cent for the years prior to 1917, with a corresponding reduction in the taxpayer's invested capital and applied a 4 per cent rate for the years subsequent to 1916. The machinery as it was used prior to 1917 had a useful life of approximately 40 years, and it is agreed that the rate of depreciation subsequent to that time was three times as great. The depreciation on tenement buildings was 50 per cent greater since 1916 than prior thereto.

By reason of the rates used by the Commissioner he determined a deficiency in income and profits taxes for the year 1920, in the amount of $7,879.94, and from that determination the taxpayers duly appealed to this Board.

### DECISION.

The deficiency should be computed in accordance with the following opinion. The amount of the deficiency to be assessed will be settled on consent or on 12 days' notice, under Rule 50.

### OPINION.

MARQUETTE: The evidence affirmatively shows that the depreciation deducted by the taxpayer in the years prior to 1917 was inadequate and that the amount allowed by the Commissioner within that period represented a reasonable deduction. The witnesses for the taxpayer gave the machinery a life of 40 years and such allowance is applicable also to the buildings. We think the rate of 2½ per cent prior to 1917 should stand.

It is agreed by the parties that the depreciation on machinery subsequent to 1916 was three times greater than in the prior years and the evidence shows that the depreciation on the buildings was 50 per cent greater. The machinery constitutes something less than 80 per cent of the depreciable property and upon the basis of the agreement as to the amount of depreciation which was sustained subsequent to 1916, and the evidence with relation to the additional depreciation of the buildings, we are of opinion that a composite

rate of 6½ per cent constitutes a reasonable allowance for the wear and tear sustained during the year in question. The tax should therefore be recomputed, using a composite rate of 2½ per cent prior to 1917 and a composite rate of 6½ per cent subsequent to that time.

ARUNDELL not participating.